FILED & JUDGMENT ENTERED
Steven T. Salata

August 26 2022

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

Laura T. Beyer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

In re: )
)
**NANCY MONEY TURNAGE**, ) Chapter 7
) Case No. 21-50224
Debtor. )
)

**ORDER DENYING TRUSTEE'S MOTION FOR AUTHORITY TO CONDUCT SALE AND OVERRULING TRUSTEE'S OBJECTION TO EXEMPTIONS**

**THIS MATTER** is before the court on the Chapter 7 Trustee's October 18, 2021 Objection to Exemptions ("Objection") and November 12, 2021 Motion for Authority to Conduct Sale of Real Property Free and Clear of Liens and Interests and to Approve Carve Out ("Motion"). After the filing of responses by the Debtor, replies by the Trustee, the Debtor's surreply to the Motion, and the Trustee's supplement to the Motion and several continued hearings, the court held a hearing on the Motion and Objection on March 4, 2022. The Trustee and the Debtor's attorney appeared at the March 4 hearing.[1]

The Motion and Objection are closely related, and the court heard argument

[1] Due to the Covid pandemic, the Trustee and the Debtor's attorney appeared at the March 4 hearing through Microsoft Teams.

on both matters simultaneously. There is no dispute about the material facts. To summarize, the Motion seeks to sell the Debtor's residence and use the proceeds to pay administrative expenses and a portion of the claims against the Debtor's estate. The Objection asserts that the Debtor's exemptions do not apply to certain claims of the federal and state governments. At its most basic level, the Trustee's proposal embodied in the Motion and the Objection is in no way controversial. The job of a Chapter 7 trustee, after all, is to liquidate the property of a debtor's estate and then distribute the proceeds among the debtor's creditors pursuant to the Bankruptcy Code's priority scheme. 6 COLLIER ON BANKRUPTCY ¶ 700.04 (16th ed. 2021). Similarly, the Objection is consistent with the language of the North Carolina exemption statute. See N.C. GEN. STAT. § 1C-1601(e) ("The exemptions provided in this Article are inapplicable to claims: (1) Of the United States or its agencies as provided by federal law; (2) Of the State or its subdivisions for taxes, appearance bonds or fiduciary bonds; . . . ."). The Trustee's proposal, however, quickly becomes more complicated than these basic concepts, the complications cause the proposal to violate core principles of bankruptcy law, and, ultimately, the court cannot approve the proposed transaction.

Normally, a Chapter 7 trustee only seeks to sell a debtor's real property when there is available equity over the claims secured by the property and any exemptions available to the debtor. Bankruptcy trustees (like executing judgment creditors outside bankruptcy) ordinarily must satisfy liens secured by the property and pay a debtor's exemption prior to reaching funds available for paying their

administrative claims and distribution to the rest of the creditor body. See DeGiacomo v. Traverse (In re Traverse), 753 F.3d 19, 29 (1st Cir. 2014) ("Bankruptcy courts have defined the equity that justifies a sale of property, consistently and explicitly, in one way: the value remaining for unsecured creditors above any secured claims and the debtor's exemption." (citations omitted)). In this case, using either party's estimate for the value of the Debtor's real estate, there does not appear to be any equity in the property over a mortgage and tax liens.

The Debtor scheduled the value of her residence at 4206 West Old US 421 Highway in Hamptonville, North Carolina at $124,510 based on the tax value, and the Trustee reports in his Motion that a realtor valued the property at $175,000 to $180,000 after an exterior-only review. The Debtor scheduled a mortgage on the property to First National Bank of PA with a balance of $52,703, and the Motion says the Trustee verified a mortgage payoff of $52,166.81 as of September 14, 2021. In addition to the mortgage, the property secures significant tax liens.[2] The Debtor scheduled secured claims of $113,143.00 for the Internal Revenue Service ("IRS") and $47,942.29 for the North Carolina Department of Revenue ("NCDoR"). The Motion says the Trustee verified that the IRS holds two tax liens totaling $113,143.59 and the NCDoR's lien is secured by $37,856.99 of the Debtor's

[2] While a debtor's exemptions can defeat some non-consensual liens, see, e.g., 11 U.S.C. § 522(f)(1)(A) (allowing debtors to avoid judicial liens that impair their exemptions), "[a] state-created homestead exemption is ineffective against a federal tax lien," Davenport v. United States, 136 B.R. 125, 127–28 (W.D. Ky. 1991) (citing United States v. Mitchell, 403 U.S. 190 (1971); United States v. Bess, 357 U.S. 51 (1958); Knox v. Great W. Life Assur. Co., 212 F.2d 784 (6th Cir. 1954); United States v. Heffron, 158 F.2d 657 (9th Cir. 1947)). As noted in the Trustee's Objection, North Carolina chose not to apply its exemptions to claims "[o]f the State or its subdivisions for taxes." N.C. GEN. STAT. § 1C-1601(e).

property.[3] In her Schedule C, the Debtor claimed a $55,000 exemption in her residence pursuant to North Carolina General Statute section 1C-1601(a)(1).[4]

This would usually be the end of the analysis for a Chapter 7 trustee, and no motion to sell the property would end up in front of the court. Even using the Trustee's more favorable numbers and without considering the Debtor's homestead exemption, there does not appear to be any equity available for the Debtor's estate, as the total amount subject to liens ($203,167.39) exceeds the value of the property as estimated by the Trustee's realtor ($175,000–$180,000) by over $20,000. Since there is no equity available for the estate, the Trustee would normally not pursue a sale. If the Trustee wanted to sell the property despite the lack of equity, the court would not let him, as this court does not allow trustees to administer bankruptcy estates solely for the benefit of secured creditors. See Joseph v. Cooper, 539 B.R. 489, 497 (W.D.N.C. 2015) ("In order to authorize the sale, the Bankruptcy Court must determine whether such a sale would benefit the estate. A sale benefits the estate when the proceeds generate equity that can be distributed among unsecured creditors." (citing Reeves v. Calloway, 546 F. App'x 235, 241 (4th Cir. 2013))); In re Fontana, Ch. 7 Case No. 14-30773, 2015 Bankr. LEXIS 3771, at *4 (Bankr. W.D.N.C. Nov. 4, 2015) ("This result is consistent with the longstanding principle that Chapter 7 trustees are not to pursue claims for individual creditors." (citing In

---

[3] The Motion also says that the Debtor owes 2021 ad valorem property taxes on the residence, but, at the March 4 hearing, the Debtor's attorney said the property taxes had already been paid. In any event, the amount of property taxes alleged to be owed in the Motion is relatively small ($494.41).

[4] Most debtors can only claim homestead exemptions of up to $35,000 pursuant to the North Carolina statute, but the Debtor is eligible to claim up to $60,000 as exempt as an unmarried widow over the age of 65 who previously owned the property as a tenant by the entireties or a joint tenant with rights of survivorship with her deceased spouse. See N.C. GEN. STAT. § 1C-1601(a)(1).

re Miller, 197 B.R. 810, 814–15 (W.D.N.C. 1996))); In re Marko, Ch. 7 Case No. 11-31287, 2014 WL 948492, at *5 (Bankr. W.D.N.C. Mar. 11, 2014) ("The Bankruptcy Code generally contemplates that over encumbered property not be sold." (citing 11 U.S.C. § 363(f)(2))).

Since there does not appear to be any equity in the Debtor's residence, the Trustee invokes a Chapter 7 exception to the normal order of distribution of sale proceeds as part of the justification for the proposed sale. Section 724(b) of the Bankruptcy Code allows Chapter 7 trustees to subordinate some types of tax liens in order to pay particular priority claims. 11 U.S.C. § 724(b); COLLIER ¶ 724.03. This section is an unusual provision in the Bankruptcy Code that allows a Chapter 7 trustee to administer encumbered property for the benefit of certain priority claimants and includes an alternate distribution scheme. See COLLIER ¶ 724.03[5], [7].

Distributions pursuant to the alternate distribution scheme begin as they would without § 724(b), by paying any liens senior to the tax lien that will be subordinated. § 724(b)(1). The alternate distributions begin at the next step, as claimants holding certain types of priority claims substitute in for the tax lien to the extent of the tax lien. § 724(b)(2). Third, the tax lien is paid to the extent that it exceeds the payments to priority creditors under § 724(b)(2). § 724(b)(3). Next, any liens that are junior to the tax lien are paid. § 724(b)(4). To the extent that the subordinated tax lien has not already been paid, it is satisfied after the junior liens. § 724(b)(5). Finally, any remaining proceeds go to the debtor's estate. § 724(b)(6).

The tax liens against the Debtor's residence in this case are appropriate for subordination pursuant to § 724(b). The Debtor, however, with one significant potential exception, does not owe any of the types of priority claims that can be paid pursuant to § 724(b). See § 724(b)(2) (listing, by reference to 11 U.S.C. § 507, certain priority claims, including domestic support obligations and wages, salaries, or commissions owed, that can be paid ahead of the subordinated tax claims). The one type of priority claim that the Trustee would be able to pay is his own compensation, which would be entirely (or at least primarily) related to the sale. See id. (including the administrative expenses of a Chapter 7 trustee pursuant to § 507(a)(1)(C) and 507(a)(2)). A corollary of the rule against allowing trustees to administer estates with no available equity, and a problem for the Trustee here, is not allowing trustees to administer estates for their own benefit. See In re Sunbum5 Enters., LLC, Ch. 7 Case No. 09-14839, Adv. Nos. 10-1268, 10-1269, 2011 WL 4529648, at *9 (M.D. Fla. Sept. 30, 2011) ("[T]he recognized purpose of § 554(b)—which allows parties in interest to move for abandonment—is to prevent trustees from unnecessarily administering assets that bring no value to the estate and to thwart the practice of trustees increasing their own commissions by not abandoning valueless property on their own." (citing In re Paolella, 79 B.R. 607, 609 (Bankr. E.D. Pa. 1987))); COLLIER ¶ 704.02[1] ("[T]he legislative history of the Code made clear Congress's displeasure with prior practices under which trustees' administration of 'nominal asset cases' benefited only the trustees themselves." (citing H.R. REP. No. 595, 95th Cong., 1st Sess. 93 (1977))). But see In re Reeves,

Ch. 7 Case No. 10-2562-8, 2011 WL 841238, at *3 (Bankr. E.D.N.C. Mar. 8, 2011), aff'd sub nom. Reeves v. Callaway, No. 11-CV-280, 2012 WL 10180780 (E.D.N.C. Aug. 14, 2012), aff'd 546 F. App'x 235 (4th Cir. 2013) (unpublished per curiam) ("[T]rustees in this district frequently liquidate fully secured property for the benefit of the secured creditor where the trustee is authorized to recover his costs of disposal of the property pursuant to § 506(c)."). The Trustee, however, negotiated "carve outs" with the IRS and the NCDoR[5] to allow 40% of the sale proceeds that would normally be paid on their liens to instead go to unsecured claims, presumably to increase the likelihood that the court would approve the sale, and the Motion proposes a modification of the § 724(b) distribution scheme.

Under the Trustee's modified § 724(b) distribution scheme, the sale proceeds would first satisfy the mortgage on the residence.[6] The Trustee would then pay approximately $30,000 in administrative expenses for his commission, the fees and expenses of his professionals, realtor and/or auctioneer fees and expenses, and closing costs. Next, the sale would pay 60% of the liens held by the IRS and the NCDoR.[7] The 40% carved out of the tax liens would be used to pay priority

[5] The Motion only references a carve-out agreement with the IRS, but the Trustee represented at the March 4 hearing that he had a similar agreement with the NCDoR. The Trustee has not presented any written agreements with either taxing authority to the court.

[6] The Trustee's Reply to Debtor's Response to Trustee's Motion for Authority to Sale [sic] Real Property ("Trustee's Reply") includes an initial distribution on the $494.91 in property taxes (that are no longer owed according to the Debtor's attorney) prior to the payment of the mortgage.

[7] The Trustee's Reply does not include the NCDoR carve out that the Trustee announced at the March 4 hearing, so it shows the NCDoR being paid (to the extent proceeds are still available) after the distribution to the unsecured creditors pursuant to the IRS's carve out. (While the Trustee asserts that the Bankruptcy Code requires the sale of the Debtor's residence pursuant to his modified version of § 724(b), see, e.g., Motion at ¶ 15 ("Thus, § 724(b) allows—even requires—trustees to liquidate property subject to a tax lien and make distribution according to the scheme laid out in that statute."), he apparently only thinks the Code requires the sale if the creditor holding

unsecured claims in full[8] with the remainder disbursed pro rata among the general unsecured creditors. Due to the amounts of their claims, the IRS (general unsecured claim of $82,410.95) and the NCDoR ($40,227.49) would get the vast majority of the funds distributed to general unsecured claimants, but the other unsecured claimants would also receive some dividend on their claims. Anything left after the modified § 724(b) distributions would go to the Debtor's estate.

Distributions pursuant to § 724(b), both as codified and as modified by the Trustee, raise a question about the payment of a debtor's (or the Debtor's) exemption, as the statute does not mention exemptions at all. See In re Christensen, 561 B.R. 195, 213 (Bankr. D. Utah 2016), aff'd sub nom. Jubber v. Bird (In re Bird), 577 B.R. 365 (B.A.P. 10th Cir. 2017) ("[T]he Court notes that there is an apparent tension between § 724 and the clear intent of § 522, which allows debtors to exempt property to assist in their fresh start."); COLLIER ¶ 724.03[3] ("If the tax lien in question is an IRS lien that encumbers the debtor's state law homestead, applying section 724(b) is not straightforward."). Prior to the March 4 hearing, the court was under the impression that the Trustee intended for his Objection to play a role in allowing the sale without payment of the Debtor's homestead exemption. At the hearing, however, the Trustee took the position that the Objection was only relevant to any net proceeds to the Debtor's estate after the

---

the tax lien agrees to his carve-out proposal.) The addition of the NCDoR's lien to the Trustee's proposal creates a math problem, as the total of the mortgage and the two tax liens exceeds the Trustee's highest possible sale price ($180,000), and the Trustee did not explain exactly how he planned to distribute the sale proceeds.

[8] The NCDoR only asserted priority status for $2192.04 of its claim and is the only creditor to assert a priority claim.

payment of claims pursuant to his modification of the § 724(b) distribution scheme.[9] Since he did not expect a great deal of net proceeds to go to the Debtor's estate, the Trustee downplayed the importance of the Objection. While he did not argue the point and despite the lack of explicit statutory guidance, the Trustee's position appeared to be that distributions pursuant to § 724(b), even as modified by him to pay general unsecured creditors in addition to (and, other than his expenses, instead of) the priority claimants that § 724(b) normally benefits, are not subject to the Debtor's homestead exemption.

Since North Carolina opted out of the federal exemptions in the Bankruptcy Code, state law generally controls the analysis of exemptions in this court. In re Gaddy, Ch. 13 Case No. 14-40346, 2014 WL 5488441, at *1 (Bankr. W.D.N.C. Oct. 22, 2014) (citing In re Crawford, 511 B.R. 395, 399 (Bankr. W.D.N.C. 2014)); In re Cook, Ch. 7 Case No. 02-11321, 2003 WL 21790296, at *1 (Bankr. W.D.N.C. Mar. 4, 2003). There is a long-standing precedent in North Carolina of construing exemptions liberally. In re Foley, Ch. 7 Case No. 16-50331, 2016 WL 4691053, at *2 (Bankr. W.D.N.C. Sept. 7, 2016) (citing Elmwood v. Elmwood, 295 N.C. 168, 185 (1978)); see also Taylor v. Caillaud, No. 15-CV-00206, 2015 WL 7738391, at *4 (W.D.N.C. Dec. 1, 2015) ("The North Carolina Supreme Court has cautioned that 'provisions which restrict a debtor's access to his exemptions should be construed

[9] The Trustee's Reply to Debtor's Response to Trustee's Objection to Exemptions says, "The Trustee does not seek to deny the Debtor's exemption entirely as to all creditors; however, to the extent the Debtor is determined to have equity in the Property to exempt, that exemption should be denied to allow the net proceeds to be payable to the IRS and/or NCDOR upon the unsecured portion of their respective claims." The Trustee apparently abandoned this argument at the March 4 hearing upon the realization that he was, in fact, seeking to deny the Debtor's exemption entirely as to all creditors.

narrowly.' Thus, debtors have long been 'allowed a great deal of flexibility in claiming and maintaining their exemptions' under the state's law." (quoting Household Fin. Corp. v. Ellis, 107 N.C. App. 262, 266 (1992), aff'd 333 N.C. 785 (1993))). Given the importance of the North Carolina homestead exemption in providing shelter to debtors and their families, see Cook, 2003 WL 21790296, at *2 ("The language of the North Carolina homestead exemption statute suggests that its purpose is to secure debtors and their families the shelter of a homestead."), it is not surprising that it "is a favorite of the law and will be sustained whenever possible," In re Bryant, Ch. 7 Case No. 94-10476, slip op. at 4 (Bankr. W.D.N.C. Feb. 2, 1995) (citing Pence v. Price, 211 N.C. 707 (1937)).

When other courts have considered the interplay of carve outs, § 724(b), and/or exemptions, the results have not been consistent, except in the inconsistency in results and rationales. Some courts conclude that carve outs of a secured creditor's proceeds for distributions to unsecured creditors do not implicate a debtor's exemptions. E.g., In re Stark, Ch. 7 Case No. 8-20-70948, 2020 WL 5778400, at *2 (Bankr. E.D.N.Y. Sept. 25, 2020), rev'd Stark v. Pryor (In re Stark), No. 20-CV-4766 (E.D.N.Y. June 28, 2022) ("[T]he funds generated for the benefit of the estate by a chapter 7 trustee pursuant to the [carve-out] agreement proposed in this case are not attributable to a debtor's equity interest in a homestead, but rather are attributable to the trustee's exercise of his powers to negotiate with the mortgagee to gain some benefit for the estate.")[10]; In re Bunn-Rodemann, 491 B.R.

---

[10] The Eastern District of New York district court reversed the bankruptcy court's decision in Stark shortly before the entry of this order. See Stark v. Pryor, slip op. at 11 ("I hold that Stark would be

132, 136 (Bankr. E.D. Cal. 2013) ("To the extent that a creditor elects to pay a portion of the sales proceeds subject to its lien as an 'investment payment' for the bankruptcy estate to conduct a short-sale of this Property, such monies of the creditor are not assets in which the Debtor may claim an exemption."). Similarly, some courts hold that distributions pursuant to § 724(b) are not subject to a debtor's exemptions, e.g., Grochocinski v. Laredo (In re Laredo), 334 B.R. 401, 415 (Bankr. N.D. Ill. 2005) (holding that the IRS's lien (pursuant to § 522(c)(2)(B)) and the priority claims described in § 507(a)(1)–(7) (pursuant to § 724(b)) are superior to the debtors' homestead exemption), and allow a § 724(b) sale even when a trustee's costs are the only priority claims that will be paid, id. at 413. And some courts do not see a problem with combining carve outs and § 724(b) as the Trustee's Motion attempts here. E.g., Reeves, 2011 WL 841238, at *3 ("The key point is this: the carve out for the benefit of unsecured creditors is a carve out from the lien held by the IRS, not from a creditor who would be subject to the debtor's exemption." (citing In re World Health Alts., Inc., 344 B.R. 291, 297 (Bankr. D. Del. 2006))).[11]

Other courts reach the opposite conclusions in each of these situations. While carve outs are frequently used in bankruptcy, in this court and others, they are not

entitled to her homestead exemption in a carve-out deal, because the value of the carve-out is ultimately derived from equity in the Property as defined by New York law. The Bankruptcy Court erred in determining otherwise.").

[11] The district court and the Fourth Circuit both affirmed the bankruptcy court's decision in Reeves, but neither appellate court had much to say about the carve out and § 724(b) issues. The brief district court order devotes part of one sentence to the carve out and § 724(b), see Reeves v. Callaway, 2012 WL 10180780, at *1 ("Therefore, Appellants' claimed exemption on the residence will not prohibit the sale of such property, in light of § 522(c)(2)(B), nor hinder the IRS from allocating a portion of the sale proceeds for administrative costs and unsecured claims pursuant to § 724(b)."), while the unpublished Fourth Circuit opinion focuses almost entirely on the issue of whether the debtors' exemption removed the property from their estate, concluding that it did not, Reeves v. Callaway, 546 F. App'x at 241. The Fourth Circuit opinion does not mention § 724(b) at all and only addresses the carve out in passing, id. at 238, 241.

universally allowed to defeat debtors' exemptions. See, e.g., In re Anderson, 603 B.R. 564, 570–71 (Bankr. W.D. Va. 2019) (refusing to allow carve out of sale proceeds of property owned tenancy by the entireties for the benefit of individual unsecured creditors); In re Wilson, 494 B.R. 502, 506 (Bankr. C.D. Cal. 2013) ("It does not matter how funds are generated by the estate through a Section 363 sale, including if derived from a 'tip' [a/k/a carve out] from Bank of America or Wachovia so that they will not have to undertake a foreclosure proceeding under California law. Funds derived from these sales are property of the estate and are subject to valid exemptions."). Likewise, some courts hold that distributions pursuant to § 724(b) are subject to a debtor's exemptions. See, e.g., In re Selander, 592 B.R. 729, 735 (Bankr. W.D. Wash. 2018) ("Though cloaked in a subordination agreement, effectively the Trustee seeks to do more than merely subordinate a tax lien, he claims the ability to pull exempt property back into the estate and surcharge the exemption. In the Court's view, this is not a result Congress intended with the enactment of § 724(b)."). And some courts raise questions about a trustee using § 724(b) solely to pay her own fees and expenses. E.g., Sheehan v. Posin, Ch. 7 Case No. 11-CV-160, 2012 WL 1413020, at *5 n.1 (N.D. W. Va. Apr. 23, 2012) (suggesting that the bankruptcy court below could examine whether a sale that only paid administrative costs was "an attempt by the trustee to churn property worthless to the estate just to increase fees" (quoting In re K.C. Mach. & Tool Co., 816 F.2d 238, 246 (6th Cir. 1987))); Oakland Cnty. Treasurer v. Allard (In re Kerton Indus.), 151 B.R. 101, 101–02 (E.D. Mich. 1991) (holding that a sale pursuant to § 724(b) that

only resulted in the payment of administrative expenses related to the sale did not benefit the bankruptcy estate); see In re Fialkowski, 483 B.R. 590, 594 (Bankr. W.D.N.Y. 2012) ("[T]he full scope of § 724(b) would best be understood in a case in which there are *pre-petition* priority unsecured claims that would benefit from the administration of the collateral.").

Christensen, the case with a dispute that is most similar to the one before this court, thoroughly examines the relevant issues and rejects the combination of § 724(b) and a carve out. While in the context of a Chapter 7 trustee's application for compensation, Christensen involves two bankruptcy cases with liens that exceed the value of the debtors' properties, proposed carve outs of the IRS's liens, attempts to use § 724(b) to pay a trustee's fees and costs, and no proposed distribution on the debtors' exemptions. 561 B.R. at 197–98.[12] Relying on the Handbook for Chapter 7 Trustees prepared by the Office of the United States Trustee,[13] Christensen concludes that the proposed sales were not mandatory due to the lack of equity in the properties. Id. at 203–05. Since the Bankruptcy Code did not require the trustee to sell the properties, the trustee needed to show a benefit to the unsecured

[12] The debtors in Christensen converted to Chapter 13 before the court ruled on the motions and objections related to the proposed sales, and the Chapter 7 trustee subsequently filed fee applications in the Chapter 13 cases. 561 B.R. at 201.

[13] Since bankruptcy cases in North Carolina (and Alabama) are overseen by bankruptcy administrators instead of a U.S. trustee, the Handbook for Chapter 7 Trustees is technically not applicable to Chapter 7 trustees in this state. In practice, however, the administration of Chapter 7 cases does not vary a great deal between trustee and bankruptcy administrator districts. See, e.g., Siegel v. Fitzgerald, No. 21-441, slip op. at 3 (U.S. June 6, 2022) ("The Trustee Program and the Administrator Program handle the same core administrative functions, but have different funding sources."); FED. R. BANKR. P. 9035 ("In any case under the Code that is filed in or transferred to a district in the State of Alabama or the State of North Carolina and in which a United States trustee is not authorized to act, these rules apply to the extent that they are not inconsistent with any federal statute effective in the case.").

creditors of the debtors' estates to support his fee applications. Id. at 205–06. He could not, largely because Christensen concludes that the funds carved out of the sale proceeds were subject to the debtors' homestead exemptions. Id. at 210–11 ("Carve-outs are not a means for secured creditors to dictate payments to other creditors. The Trustee and the IRS cannot, simply by agreement, defeat junior lien interests or the Debtors' homestead exemptions, nor can a stipulation between the Trustee and the IRS bind the Court with respect to questions of law." (footnote omitted)). The Utah court decided the trustee's agreement with the IRS was a sham that was not really intended to benefit the unsecured creditors of the debtors but instead to allow the IRS to offer a "tip" to the trustee for liquidating the debtors' property, noting that the IRS would also be a significant beneficiary of the distribution to the unsecured creditors. Id. at 212 ("[T]he provision that the tip [a/k/a the carve out] will go to unsecured creditors allows the trustee to come before the court armed with the argument that in administering this asset, he is fulfilling his statutory duty by benefitting unsecured creditors, thereby insulating the arrangement from scrutiny. This argument is facile and belies the true nature and purpose of the transaction."). Christensen also notes that the arrangement between the IRS and the trustee would allow the IRS to obtain a result it could not outside of bankruptcy, as 26 U.S.C. § 6334(a)(13)(B) "specifically exempts a taxpayer's principal residence from levy." Id. at 205 n.40. Section 724(b) does not provide any additional support for the proposal "because properly exempted property is not subject to the provisions of § 724." Id. at 213. Christensen forcefully and

persuasively rejects a trustee's sale that combines a carve out and § 724(b) and is very similar to the Trustee's proposal in this case.

In addition, Christensen is one of the few cases discussed in this order that even mentions the impact of the Supreme Court's holding in Law v. Siegel, 571 U.S. 415 (2014),[14] on the issues at play, and, in its Bird opinion affirming Christensen, the Bankruptcy Appellate Panel for the Tenth Circuit provides the most thorough examination of Law in this context. In the course of holding that bankruptcy courts cannot surcharge a debtor's exemption for bad faith conduct, Law notes that subsection (k) of the Bankruptcy Code's exemption statute says exempted property is "not liable for payment of any administrative expense." Id. at 420–22 (quoting § 522(k)). There are "two narrow exceptions" to that "general rule," but both of the statutory exceptions relate to the costs of avoiding a transfer and were not at issue in Law.[15] Id. at 422 n.2. The Court then recalls its previous observation that § 522 balances "the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on creditors," id. at 426–27 (quoting Schwab v. Reilly, 560 U.S. 770, 791 (2010)), and adds that "[t]he same can be said of the limits imposed on recovery of administrative expenses by trustees," id. at 427.

While the factual situation here is distinguishable from the one before the Court in Law, "it would nonetheless have the same effect—to deprive [the Debtor] of [her] homestead exemption[] on a basis other than one enumerated in the Code." Bird, 577 B.R. at 386. Law holds that a debtor cannot be deprived of a homestead

---

[14] Many of the cases do not mention Law because they preceded the Supreme Court's opinion.
[15] The two exceptions are also not at issue in this case.

exemption to pay administrative expenses even when a bankruptcy court found that a trustee had to incur over $500,000 in attorney's fees due to the debtor's fraud. Law, 571 U.S. at 420. Here, as in Bird/Christensen, the Trustee's Motion is not based on any allegation of misbehavior by the Debtor. See Bird, 577 B.R. at 386 ("Debtors in these cases do not stand accused of any fraudulent or contemptuous behavior."). Law does allow that state law could provide for the disallowance of an exemption created by the state, 571 U.S. at 425 (citing In re Sholdan, 217 F.3d 1006, 1008 (8th Cir. 2000); COLLIER ¶ 522.08[1]–[2]), but the Trustee did not assert any state law basis for ignoring the Debtor's homestead exemption other than the Objection, which he did not believe was necessary to allow his proposed modified distributions pursuant to § 724(b). Given the lack of an explicit statutory basis, a conclusion that the payment of administrative expenses pursuant to § 724(b) is not subject to a debtor's exemptions seems questionable at best after Law. See Christensen, 561 B.R. at 214 ("[I]t is inconsistent with § 522(k) if exempted property is subject to distribution under § 724(b) and used to pay administrative expenses.").[16]

Finally, the court must consider the Trustee's proposal in light of one of the primary purposes of bankruptcy: the offer of a fresh start to the Debtor. See Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 363–64 (2006) ("Critical features of every

---

[16] Another problem with concluding that the silence of § 724(b) on the issue of exemptions means that the distributions are not subject to exemptions is that Congress explicitly says elsewhere in the Code that some, but not all, of the priority claims that are included in § 724(b) are not subject to a debtor's exemptions. For example, § 522(c)(1) (by reference to § 523(a)(5)) makes exempt property liable for payments of domestic support obligations, which can be paid pursuant to § 724(b)(2) (by reference to § 507(a)(1)(A) and (B)). If Congress wanted to make additional types of priority claims superior to exemptions when the distributions are pursuant to § 724(b), the statute should say so.

bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." (citing Loc. Loan Co. v. Hunt, 292 U.S. 234, 244 (1934))); Hunt, 292 U.S. at 244 ("One of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' " (quoting Williams v. U.S. Fid. & Guar. Co., 236 U.S. 549, 554–55 (1915))). According to the Trustee's Motion, "any negative impact on the Debtor from the sale of the Property is blunted by the fact that the IRS lien will be reduced dollar for dollar by the amount of sale proceeds received by the IRS, thereby assisting the Debtor with her fresh start." The court cannot endorse the Trustee's creditor-friendly version of a fresh start, where every dollar paid to a secured creditor constitutes a benefit to the Debtor. Moreover, the Debtor would have received an even better version of the Trustee's type of fresh start if she had sold the property on her own without filing bankruptcy, since all of the proceeds could have gone to the liens instead of the diversion of a portion to unsecured claims. If the court approved the Trustee's proposal, the Debtor, who is a widow who is at least 71 years old, would begin her "fresh start" in need of a new home while still subject to significant tax liens. The Motion, citing Laredo, 334 B.R. at 412, asserts that § 724(b) shifts the costs of estate administration to the lienholding tax authorities, but the costs of the Trustee's

proposal would actually be shifted to the Debtor, see Christensen, 561 B.R. at 214 ("[D]ebtors may be burdened with tax debt that could have been satisfied from the property—in effect, they could also be saddled with the administrative expenses of the case."). In at least one similar case, the IRS agreed to give a debtor credit for the proceeds carved out of its lien, see Reeves v. Callaway, 546 F. App'x at 241 ("Notably, the fact that the IRS agreed to allocate part of its tax lien as a carve-out for unsecured creditors has no adverse consequences for Debtors because the Trustee confirmed before the bankruptcy court that Debtors will receive full credit with respect to the IRS lien for any amount paid to unsecured creditors from the sale proceeds as part of the carve-out."), but the Trustee did not allege a similar agreement with the taxing authorities in this case. Despite the Trustee's insistence to the contrary, the court does not see his proposal as supporting the Debtor's fresh start.

The Trustee's Motion raises many issues, but the court does not need to fully resolve all of them in order to deny the Motion. The Trustee's contention that his duties to the Debtor's estate require him to seek to sell the Debtor's residence with carve outs from taxing authorities and a modification of the already unusual distribution scheme under § 724(b) is incorrect. See Christensen, 561 B.R. at 203–05. Without the carve outs and the modified § 724(b) distributions, the Trustee's proposal would not benefit the Debtor's estate and would violate the principle that trustees should not administer property solely for the benefit of secured creditors and/or themselves. The carve outs and novel distribution scheme solve the benefit

to the estate problem, but the proposal only works if the court ignores the Debtor's homestead exemption (for reasons that the Trustee did not explain). Given the strong protection of exemptions in North Carolina, particularly the homestead exemption, and the Supreme Court's instruction about the limited reasons for paying administrative expenses with exempt property, which are not present in this case, the court believes the Debtor's exemptions deserve more respect than the Motion provides. In addition, Congress created a precise scheme for distributions pursuant to § 724(b) that differs from the normal priorities applied in almost all bankruptcy cases, and it is not appropriate for the Trustee to create a new version of that distribution scheme by agreement with the taxing authorities or otherwise. Adding general unsecured creditors to the § 724(b) distribution scheme would be a significant rewrite of the statutory language.[17]

If the Objection is viewed as an adjunct of the Motion and the Trustee's overall proposal, the court would overrule it for the reasons discussed in this order. The Trustee, however, filed the Objection separately from (and prior to) the Motion, and even though the Objection appears noncontroversial on its face, it also fails as a separate matter. Several courts, including this one, have considered and overruled similar objections. See Fontana, 2015 Bankr. LEXIS 3771, at *3–4 (citing In re Ruppel, 368 B.R. 42, 44 (Bankr. D. Or. 2007); In re Quezada, 368 B.R. 44, 47 (Bankr. S.D. Fla. 2007); In re Vandeventer, 368 B.R. 50, 54 (Bankr. C.D. Ill. 2007)). All of these cases make a distinction between an exemption not applying to certain

[17] From a public policy standpoint, there is some sense in paying the priority claims subject to § 724(b) like child support and unpaid wages ahead of tax liens. The same logic does not apply to paying general unsecured claims and the Trustee's commission instead of the Debtor's exemption.

types of claims or creditors, on the one hand, and disallowing the exemption altogether, on the other. Id. (citations omitted); see also Christensen, 561 B.R. at 213 (noting that property remaining liable for certain claims does not mean that an exemption is disallowed (citing In re Covington, 368 B.R. 38, 40 (Bankr. E.D. Cal. 2006))). Since the property in question is still exempt (except as to certain claims/creditors), the Trustee cannot administer it. Fontana, 2015 Bankr. LEXIS 3771, at *4 (citations omitted). Ruppel, Quezada, Vandeventer, and Covington all examine changes to § 522 pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), but Fontana deals with the same North Carolina subsection cited by the Trustee, the implications of § 522 and the North Carolina statute are very similar, and the Trustee did not provide a state-specific reason to deny the Debtor's exemption or address Fontana and its predecessors at all.

Accordingly, the Trustee's Motion is hereby **DENIED**, and the Trustee's Objection is hereby **OVERRULED**.

**SO ORDERED**.

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court